# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| **TERRENCE LEE** | **CIVIL ACTION NO. 13-874-P** |
| **VERSUS** | **JUDGE WALTER** |
| **DANNY DRISKEL , ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Terrence Lee ("Plaintiff"), pursuant to 42 U.S.C. § 1983.  This complaint was received and filed in this court on April 29, 2013. Plaintiff claims his civil rights were violated during his criminal trial proceedings and detention at the Bayou Dorcheat Correctional Center and the Claiborne Parish Detention Center.  Plaintiff was incarcerated in the Claiborne Parish Detention Center in Homer, Louisiana, when he filed this action.  Plaintiff names Danny Driskel, Johnny Sumler, John Toffton, the Louisiana Second Judicial District Court, Steven Smith, Benjamin Bleich, Rick Warren, Judge Falen, Johnathan Stewart, and Rena Aubrey as defendants.  The allegations and claims made by Plaintiff are numerous and, sometimes, inconsistent.  Those allegations and claims are fairly summarized below.

Plaintiff claims he was arrested in Bienville Parish by Deputy Steven Smith on October 24, 2012, for one count of DWI, first offense, one count of driving under suspension, and one count of resisting an officer. He claims the stop was illegal and without a warrant. Plaintiff claims Deputy Smith altered the video of the incident and falsified a report to allege a charge of DWI and that he was violent upon arrest. Plaintiff claims Deputy Smith was biased and retaliated against him because he had arrested him several times prior to this incident. He claims Deputy Smith used unnecessary force and made racial remarks during his arrest. Plaintiff claims Deputy Smith denied him his right to have counsel present during questioning and denied him the right to a telephone call. He claims he was booked into the Bienville Parish Jail.

Plaintiff claims Deputy Smith did not allow him to park his truck at his cousin's house, which was 15 feet from the stop. He claims Deputy Smith also denied his request to have his truck towed by a specific company.

Plaintiff claims that on October 25, 2012, Danny Driskel ordered him transferred to the Bayou Dorcheat Correctional Center in retaliation for a civil rights complaint (10-146) filed in this court. He claims he did not have access to legal materials or a law library in order to prepare his defense. Plaintiff claims that on October 29, 2012, he was placed in lock-down. He claims Driskel knew he had an amended complaint due in this court in December 2012. He claims he was unable to obtain legal mail and timely amend his complaint. He claims the case involved an illegal charge of domestic abuse battery, an illegal DWI first offense conviction, and an illegal charge of battery to the infirm.

Plaintiff also claims the conditions at Bayou Dorcheat Correctional Center were unsafe because explosives were moved and exploded at Camp Minden.  He claims that for three and a half months he was denied outside activity unless he went outside to smoke.

Plaintiff claims that on October 25, 2012, Judge Falen contacted him by telephone to conduct his 72-hour hearing.  He claims his charges were enhanced to DWI, third offense, and two counts of resisting an officer, he was subjected to excessive bail, and he was appointed attorney Rick Warren to represent him.  He claims there was no evidence to support a driving while intoxicated charge or two resisting an officer charges or probable cause for detention.  He claims a 72-hour hearing was not held on the new charge of resisting an officer.  He further claims he should have been released from the bail obligation on the new charge.

Plaintiff claims authorities tampered with the discovery to construct false documents to reconstruct the 72-hour hearing.  He further claims his bail was increased without notice.

Plaintiff claims that on December 4, 2012, he met his attorney and pleaded not guilty.  He claims no evidence was produced to support the charge that he was driving under a suspended license.  Plaintiff claims Judge Falen denied his motion for a bond reduction.

Plaintiff claims Assistant District Attorney Benjamin Bleich improperly enhanced his charge to DWI, third offense.  He claims the evidence was insufficient to support the charges of DWI, third offense and resisting an officer.  He claims he was not informed of the second count of resisting an officer and did not have a 72-hour hearing regarding this charge.

Plaintiff claims he received ineffective assistance of counsel because his attorney Rick

Warren failed to file motions for a preliminary examination, speedy trial, and bond reduction. He claims Warren failed to provide him with a copy of the discovery.  He claims he had no contact with Warren from October 24, 2012 until January 8, 2013.  He claims  failed to assist him with a defense and encouraged him to accept a plea agreement.  He claims Warren failed to file a motion for recusal.  Plaintiff claims that on January 8, 2013, Judge Falen denied his motion to represent himself.

Plaintiff claims no criminal trial proceedings were held on the charges of driving under suspension and resisting an officer.  He claims he was denied due process as to these charges.  He claims Warren failed to represent him as to these charges and failed to disclose any evidence or probable cause determination to him.

Plaintiff claims the District Attorney used illegal convictions to enhance his punishment.  He claims the court did not allow him to address his issues.  He further claims the court denied him habeas relief.

Plaintiff claims that on February 6, 2013, Judge Falen denied his motion to represent himself.  He claims Judge Falen reduced his bail, but still set it at an excessive amount. He claims Judge Falen moved his trial date from February 19, 2013 to May 20, 2013.  He claims that as a result of Judge Falen's actions, he was punished for his misdemeanor charges which carried a lesser possible sentence.  He claims Judge Falen retaliated against him because he requested a speedy trial.  Plaintiff claims Judge Falen delayed his criminal trial proceedings in order to allow the District Attorney to withhold evidence.

Plaintiff claims that on February 6, 2013, he was transferred to the Claiborne Parish

Detention Center.  He claims prison officials denied him access to the law library by placing him in lock-down and charging him with disciplinary violations.  He claims that on March 5, 2013, Captain John Toffton punished him because he attempted to obtain legal assistance and go to the law library.  He claims he was placed in administrative segregation for one week and this caused a substantial delay in the filing of his legal documents.

Plaintiff claims that on March 12, 2013, he filed a pro se motion for speedy trial into the record.  He claims Judge Falen set a hearing on his motion for April 2, 2013.  Plaintiff claims that on April 2, 2013, Judge Falen denied his motion for a speedy trial because of an affidavit by Rick Warren.  He claims the court denied him a habeas hearing without reason. He further claims the court denied him an OR bond.  He claims the court did not  rule on his pro se motion to quash.

Plaintiff claims that on April 2, 2013, prison officials threatened to lock him up for practicing law.  He claims that on April 12, 2013, Captain Toffton and Warden Johnny Sumler informed him that he could not go to the law library because he was a pretrial detainee.  He claims inmates are not allowed to assist pretrial detainees with legal matters. He further claims the inmate accountant withheld his paperwork and therefore delayed his legal matters.  He claims Judge Clayson issued the order that pretrial detainees were not to be assisted with pro se motions and they would be criminally prosecuted for practicing law without a license.

Plaintiff claims that on April 7, 2013, the trial court judge again denied him an OR bond.  Plaintiff claims that on May 7, 2013, he made a statement in court that Judge Falen

should be recused.  He claims Judge Falen stopped all proceeding and upset his May 20, 2013 trial date.  He claims was denied access to the courts because he could not file motions in the trial court while the recusal motion was pending.  He claims the Louisiana Second Circuit Court of Appeal failed to grant him relief.  He claims the Supreme Court of Louisiana returned his filings to him.  He claims Judge Falen refused to order production of relevant transcripts and production of the video.

Plaintiff claims that on August 13, 2013, Judge Falen denied his motions for an OR bond or a bond reduction.  He claims the minutes were falsified to reflect that he filed the motion to relieve his attorney, when in fact his attorney filed the motion.  He claims he was forced to represent himself.  He claims Judge Falen failed to recuse himself.

Plaintiff claims that on August 14, 2013, Captain Tofton denied him access to the law library and to make copies.  He admits he was able to mail a notice of intent to appeal to the court on that day and an original of his filing.  He claims his return date was set for September 30, 2013.  He claims that on October 31, 2013, the Court of Appeal denied him relief on the showing made.  He claims John Tofton deprived him of his right to prepare his writ.  He claims the Court of Appeal failed to order the trial court to hold his trial or that he be granted access to the law library.

Plaintiff claims Captain Tofton repeatedly refused to answer his grievances filed in the administrative remedy procedure or allow him to make copies.

Plaintiff claims his trial was set for September 16, 2013.  He claims that on September 17, 2013, he filed a motion to recuse Judge Falen.  He claims that on October 1, 2013, he was

denied a fair hearing by Judge Teat.

Plaintiff claims prison officials tampered with his legal mail.  He claims the trial court falsified three different receipt dates and withheld documents for seven weeks before returning them to him denied.

Plaintiff claims that on January 27, 2014, he was convicted of DWI, second offense, and resisting an officer.

Accordingly, Plaintiff seeks restitution for the time incarcerated, injunctive and punitive damages, his immediate release, and the return of his truck free of charge.

## LAW AND ANALYSIS

### Heck Claims

As summarized above, Plaintiff claims he was wrongly convicted and sentenced because of the actions of Defendant Smith.  Plaintiff is seeking monetary damages for allegedly unconstitutional convictions and sentences.  The United States Supreme Court held that in order to recover monetary compensation for an allegedly unconstitutional conviction or sentence or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a prisoner must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas." Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994).  Heck involved a civil rights claim brought by a state prisoner.  The Court dismissed the Section 1983 suit until plaintiff could demonstrate that his conviction or sentence had been

invalidated.

When a claim comes within the parameters of the <u>Heck</u> teachings, it is not cognizable under 42 U.S.C. § 1983 so long as the validity of the conviction or sentence has not been called into question as defined therein, which requires dismissal of claims not meeting its preconditions for suit.  <u>See</u> <u>Johnson v. McElveen</u>, 101 F.3d 423, 424 (5th Cir. 1996).

Plaintiff is seeking monetary damages for civil rights violations under Section 1983; therefore, he must prove his convictions or sentences have been invalidated.  He has not met this precondition and these claims must be dismissed until such time that he can demonstrate that his convictions or sentences have been invalidated.

**Conclusory Claims**

Plaintiff claims Deputy Smith used excessive force and made racial remarks during his arrest.  A Section 1983 plaintiff has long been required to plead his case with "factual detail and particularity," not mere conclusory allegations.  <u>Elliot v. Perez</u>, 751 F.2d 1472, 1473 (5th Cir. 1985); <u>Hale v. Harney</u>, 786 F.2d 688 (5th Cir. 1986).  The Supreme Court has abolished this heightened pleading standard for claims against municipalities, <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 113 S.Ct. 1160 (1993), but the requirement remains firmly in place for claims against individual public officials.  <u>See</u> <u>Schultea v. Wood</u>, 47 F.3d 1427 (5th Cir.1995) (en banc).

In this case, Plaintiff has named individual officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations.  Plaintiff has failed to do so even though he has filed *numerous* amended complaints.

Accordingly, these claims against Deputy Smith regarding excessive force and racial remarks should be dismissed as frivolous for failure to state a claim on which relief may be granted.[1]

**Property Claim**

Plaintiff claims that after his arrest, Deputy Smith did not allow him to park his truck at his cousin's house or have his truck towed by a specific company.  Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities secured by the Constitution or laws of the United States" by a person acting under color of state law.  Accordingly, the initial inquiry and threshold concern of the reviewing court is whether Plaintiff's constitutional rights have been violated.  See Parratt v. Taylor, 451 U.S. 527, 107 S. Ct. 1908 (1981).

The property of which Plaintiff was allegedly deprived can constitute "property" within the meaning of the Due Process Clause of the Fourteenth Amendment and its loss is worthy of redress if the loss implicates constitutional rights.  See id. at 542, 107 S. Ct. at 1916.  However, the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States.  See Baker v. McCollan, 433 U.S. 137, 99 S. Ct. 2689 (1979).  A constitutional deprivation of property without due process of law, as differentiated from a state tort law claim, must be intentional and plaintiff

---

[1]Plaintiff's excessive force claims may also be subject to a Heck dismissal because he was convicted of resisting an officer.  The Fifth Circuit has held that "a successful claim of excessive force would necessarily undermine [a] conviction for resisting arrest." Thomas v. Louisiana State Police, 170 F.3d 184, 184 (5th Cir.1999).

must allege specific facts which support such a conclusion.

Absent an intentional deprivation of property where the charge only supports a negligent failure by defendants, a constitutional deprivation does not exist.  "[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property."  Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986).  Moreover, even in instances where intentional deprivation occurs where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated.  See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204 (1984), on remand, 744 F.2d 22 (4th Cir. 1984); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).  Mere assertions of intentionality are not enough in the absence of specific facts supporting the assertions and "even if the taking were intentional, the state could afford the [plaintiff] due process by providing a post-deprivation remedy for the redress of the unforeseeable, unauthorized injury... alleged."  Lewis v. Woods, 848 F.2d 649, 652 (5th Cir. 1988).

Louisiana tort law provides Plaintiff the opportunity to seek redress for his loss, whether intentional or negligent.  See La. Civ. Code art. 2315.  Accordingly, Plaintiff has failed to state a claim cognizable under Section 1983.

**Transfer Claim**

Plaintiff claims that on October 25, 2012, Danny Driskel ordered him transferred to the Bayou Dorcheat Correctional Center in retaliation for a civil rights complaint that was pending in this court.  This is not a claim that this court can resolve.  Federal courts should

not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration.  See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds).  Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline and security in prison.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The United States Supreme Court has held that it is for state prison authorities to decide where a state prisoner is to be incarcerated, and that a prisoner has no right to challenge his place of incarceration.  See Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).  Under Olim and Meachum, Plaintiff has no right to challenge his transfer from the Bienville Parish Jail to the Bayou Dorchet Correctional Center.

Accordingly, Plaintiff's claim regarding his place of incarceration lacks an arguable basis in law and in fact, and it should be dismissed with prejudice as frivolous.

**Retaliation Claim**

Plaintiff claims he was transferred to the Bayou Dorcheat Correctional Center in retaliation for his filing of a civil rights complaint in this court.  To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident–the transfer to Bayou Dorcheat Correctional Center-would not have occurred.  Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995), citing Mt. Healthy City School Board District Bd. Of Education v. Doyle, 429

U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

As shown above, Plaintiff's constitutional rights have not been shown to have been violated by his transfer to Bayou Dorcheat Correctional Center.  Moreover, the retaliatory motive alleged by Plaintiff is entirely conclusory as he provides no specific allegations showing that "but for" this motive he would not have been transferred to the Bayou Dorcheat Correctional Center.

Accordingly, Plaintiff's claims regarding retaliation should be dismissed with prejudice as frivolous.

**Access to the Court Claims**

Plaintiff claims that while incarcerated at the Bayou Dorcheat Correctional Center from October 25, 2012 to February 6, 2013, he was denied access to the law library and legal materials to prepare his defense.  Plaintiff also claims that on October 29, 2012, he was placed in lock-down.  He claims that Warden Driskel knew he had an amended complaint due in December 2014 in this court in case #10-461.   He claims he was unable to obtain legal mail and timely amend his complaint.  He claims the case involved an illegal charge of domestic abuse battery, an illegal DWI conviction, and an illegal charge of battery to the infirm.

Plaintiff claims that on February 6, 2013, he was transferred to the Claiborne Parish Detention Center.  He claims he was charged with disciplinary violations and placed in lock-down.  He claims that on March 5, 2013, he was placed in administrative segregation for one week and this caused a substantial delay in the filing of his legal documents.  He claims that

on April 12, 2013, he was informed that he could not go to the law library because he was a pretrial detainee.  He claims the prison accountant delayed his legal work and delayed his legal matters.  Plaintiff claims that on August 14, 2013, he was denied access to the law library and was not allowed to make copies.  He admits that he was able to mail a notice of intent to appeal to the court on that date and an original of his filing.  He claims prison officials tampered with his legal mail.

Prisoners have a constitutional right of meaningful access to the courts. Degrate v. Godwin, 84 F.3d 768, 768-69 (5th Cir.1996) (quoting Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)).  However, this constitutional guarantee is not without limitation. Lewis v. Casey, 518 U.S. 343 (1996) (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987)).  In Lewis v. Casey, 518 U.S. 343, (1996), the Supreme Court reviewed its holding in Bounds v. Smith, 430 U.S. 817, (1977) which is the source of a prisoner's constitutional right to "meaningful access to the courts." While the Supreme Court reaffirmed a prisoner's right of access to the courts in Lewis, the Court limited the parameters of Bounds and set forth a standard to be applied when determining whether to grant relief for an access to the courts violation.  In so holding, the Court noted that a prisoner must show an actual injury, explaining that this requirement is derived from the doctrine of standing. Lewis, 116 S.Ct. at 2179.  The Court used the analogy of a prisoner who is denied access  to that of a healthy prisoner who has been deprived of medical treatment.   In both cases, neither the access deprived prisoner nor the healthy prisoner have sustained constitutional injury, and thus, are not entitled to relief under Section

1983. The Court emphasized that the court's role is to provide relief to claimants who have suffered actual harm, not to interfere with the management of prisons.

Accordingly, the Fifth Circuit has held that a prisoner cannot prevail on an access to the courts claim without proving an actual injury in non-frivolous litigation as a result of the defendant's alleged unconstitutional conduct. Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999).

Application of the actual injury requirement to the instant case supports a finding that Plaintiff's access to court claims are frivolous. Plaintiff has not satisfied the "actual injury" requirement. Plaintiff has failed to allege or demonstrate that he lost the right to commence, prosecute or appeal any suit as a result of the alleged denial of access to the court. Furthermore, Plaintiff's complaint in this court reveals on its face and the pro se filings in state court that he was able to clearly present his claims to this court and the state court.

The court further finds with regard to case # 10-461 in this court that Plaintiff was placed in extended lock-down prior to this court ordering him to amend his complaint on November 9, 2012. Furthermore, Plaintiff failed to file an objection to the Report and Recommendation or an appeal. He claims only that he did not receive the amend order while in extended lock-down [Doc. 19, p.3]. He admits that on February 6, 2013, he informed the trial court that he was being denied the right to prosecute his complaint [Doc. 19, p.9]. Plaintiff was therefore aware of the order to amend and could have filed a motion or an appeal. Thus, he has failed to state any actual injury caused by the alleged conduct of Defendants.

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Restrictions on Outside Activities Claim**

Section 1983 does not establish substantive rights, but only provides a method for vindicating federal rights conferred elsewhere.  Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).  Because Plaintiff was a pre-trial detainee and not a convicted prisoner at the time of the complained of conditions of confinement, the Eighth Amendment's prohibition against cruel and unusual punishment is inapplicable.  Edwards v. Johnson, 98-30972, p.4 (5th Cir. 2000) (2000WL373976), citing, Ortega v. Rowe, 796 F.2d 765, 767 (5th Cir. 1986), cert. denied, 481 U.S. 1013, 107 S.Ct. 1887 (1987).  A pre-trial detainee's constitutional claims are considered under the Fourteenth Amendment due process clause rather than the Eighth Amendment.  Id.

In evaluating such constitutional claims, the court must first classify them as in Olabisiomotosho, 185 F.3d 521 (5th Cir. 1999), where the Fifth Circuit established a format for the proper analysis applicable to constitutional challenges by pre-trial detainees:

> We begin by deciding whether to classify the "challenge as an attack on a 'conditions of confinement' or as an 'episodic act or omission.'  The former category would include such claims as "where a detainee complains of the number of bunks in a cell or his television or mail privileges."  The latter category, on the other hand, occurs "where the complained-of harm is a particular act or omission of one or more officials."
Olabisiomotosho, Id. (citations omitted).

With respect to the claims falling into the category of "conditions of confinement," the pre-trial detainee is not permitted to be punished.  Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861 (1979).  The proper inquiry is whether the complained-of conditions amount to

punishment of the detainee.  Id.  A pre-trial detainee's due process rights are said to be "at least as great as the Eighth Amendment protections available to a convicted prisoner." Hare, 74 F.3d, at 639 (5th Cir. 1996), quoting, Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 2983 (1983).  "[A] pre-trial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose." Hare, 74 F. 3d, at 640.

To determine whether a condition of pretrial detention amounts to punishment, the court must decide whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate governmental purpose and whether it is excessive in relation to that purpose. Bell, 441 U.S. at 538.  However, for all detainees, "'[t]here is, of course, a de minimis level of imposition with which the Constitution is not concerned.'"  Bell v. Wolfish, 441 U.S. at 539 n. 21, 99 S.Ct. at  1874 n. 21, quoting Ingraham v. Wright, 430 U.S. at 674, 97 S.Ct. at 1414).  "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones." Harper v.  Showers, 174 F.3d 716, 719 (5th Cir. 1999), quoting, Woods v. Edwards, 51 F.3d 577, 581 (5th Cir.  1995).  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released." Bell, 99 S.Ct. at 1875.  Courts need not "detail the precise extent of the legitimate governmental interests," however, "the effective management of the detention facility . . . is a valid objective that may justify imposition of conditions and restrictions of detention and dispel

any inference that such restrictions are intended as punishment." Id.  In summary, under this standard, Plaintiff's complaint must demonstrate some intent to punish by the defendant to support a  constitutional claim.

Plaintiff claims that he was denied outside activity unless he went outside to smoke. Plaintiff does not allege an intent on the part of the named defendants to punish pre-trial detainees by restricting his outside activities.  The restrictions on outside activity described by Plaintiff do not appear to be conditions amounting to punishment of the detainee.  Plaintiff does not allege that he has suffered any injury more that a de minimus one as a result of the restrictions on his outside activity.  Finding this complaint to be one regarding comfort level, it appears Plaintiff has not alleged a constitutional violation.

Accordingly, Plaintiff's claims regarding restrictions on outside activities lack an arguable basis in fact and law and should be dismissed with prejudice as frivolous.

**Unsafe Conditions Claim**

Plaintiff claims conditions at Bayou Dorcheat Correctional Center were unsafe because explosives were moved and exploded at Camp Minden.  As previously discussed, a Section 1983 plaintiff has long been required to plead his case with "factual detail and particularity," not mere conclusory allegations.  Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985); Hale v. Harney, 786 F.2d 688 (5th Cir. 1986).  The Supreme Court has abolished this heightened pleading standard for claims against municipalities, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993), but the requirement remains firmly in place for claims against individual public officials.  See

<u>Schultea v. Wood</u>, 47 F.3d 1427 (5th Cir.1995) (en banc).

In this case, Plaintiff has named individual officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations. Plaintiff has failed to do so.

Accordingly, these claims regarding unsafe conditions at Bayou Dorcheat Correctional Center should be dismissed as frivolous for failure to state a claim on which relief may be granted.

**Judicial Immunity Claims**

It is well established that judges enjoy absolute immunity from liability for damages arising out of performance of their judicial duties, regardless of bad faith.  <u>Pierson v. Ray</u>, 386 U.S. 547, 87 S.Ct. 1213 (1967); <u>Stump v. Sparkman</u>, 435 U.S. 349, 98 S.Ct. 1099 (1978).  Acts are judicial in nature if they are (1) normal judicial functions (2) that occurred in the judge's court or chambers and were (3) centered around a case pending before a judge. <u>Brewster v. Blackwell</u>, 692 F.2d 387, 396-97 (5th Cir. 1982).

**Judge Falen, Judge Clayson and Judge Teat**

Plaintiff's numerous claims and allegations against Judge Falen, Judge Clayson and Judge Teat are frivolous.  The conduct challenged by Plaintiff unequivocally falls within the judges' authority as judicial officers of the court and in the ordinary exercise of judicial duties.  Accordingly, all claims against Judge Falen, Judge Clayson and Judge Teat should be dismissed with prejudice as frivolous.

**Louisiana Second Circuit Court of Appeal and Supreme Court of Louisiana**

Page 18 of  25

Plaintiff claims that the Louisiana Second Circuit Court of Appeal failed to grant him relief.  He claims the Supreme Court of Louisiana returned his filings to him unfiled.

As explained above, Plaintiff cannot maintain these claims against the Louisiana Second Circuit Court of Appeal and the Supreme Court of Louisiana.  The conduct challenged by Plaintiff unequivocally falls within the judges' authority as judicial officers of the court and in the ordinary exercise of judicial duties.

Accordingly, the claims against the Louisiana Second Circuit Court of Appeal and the Supreme Court of Louisiana should be dismissed with prejudice as frivolous.

**Assistant District Attorney Benjamin Bleich Claims**

Plaintiff claims Assistant District Attorney Benjamin Bleich improperly enhanced his charge to DWI, third offense.  He claims the evidence was insufficient to support the charges of DWI, third offense and resisting an officer.  He claims he was not have a 72-hour hearing regarding his second charge of resisting an officer.  He claims he used illegal convictions to enhance his punishment.

Prosecutors have absolute immunity when acting in a quasi-judicial mode.  Imbler v. Pachtman, 424 U.S. 409, 106 S.Ct. 984, 47 L.Ed.2d 128 (1976); Geter v. Fortenberry, 849 F.2d 1550 (5th Cir. 1988).  The Fifth Circuit has repeatedly recognized the purpose of the immunity defense is to protect public officials from undue interference with their duties and from disabling threats of liability.  Geter, 849 F.2d at 1552.  Absolute immunity is immunity from suit rather than from liability.  Elliot v. Perez, 751 F.2d 1472 (5th Cir. 1985).  The Fifth Circuit "has likewise accepted the premise that the protected official should be sheltered from

trial and pre-trial preparation as well as liability." Id. at 1478.

The conduct challenged unequivocally falls within the authority of the Assistant District Attorney as quasi-judicial officer of the court and in the ordinary exercise of his quasi-judicial duties.  Accordingly, Plaintiff's civil rights claims against Assistant District Attorney Benjamin Bleich should be dismissed as frivolous.

**Attorney Rick Warren**

Plaintiff claims attorney Rick Warren provided him with ineffective assistance of counsel.  He claims Warren failed to file motions on his behalf and provide him with a copy of the discovery.  He claims he had limited contact with Warren.  He claims Warren failed to assist him with a defense and encouraged him to accept a plea agreement.

Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege or immunity secured by the Constitution and laws of the United States.  42 U.S.C. § 1983.  A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law.  Neither privately obtained nor court appointed defense attorneys act under color of state law for purposes of Section 1983.

Both a retained and a court appointed attorney serve their client, the accused; they do not serve the state.  They serve a private function for their client that follows from the very nature of the attorney-client relationship and for which no state office or authority are needed.  Hence, neither a retained nor a court appointed attorney acts under color of state law and cannot be held liable under Section 1983. See Polk County v. Dodson, 454 U.S. 312

(1981); Ellison v. DeLa Rosa, 685 F.2d 959, 960 (5th Cir. 1982) (citing Polk County, supra);

United States ex rel. Simmons v. Zibilich, 542 F.2d 259, 261 (5th Cir. 1976);  Nelson v.

Stratton, 469 F.2d 1155 (5th Cir. 1972); Richardson v. Fleming, 651 F.2d 366 (5th Cir.

1981); Mills v. Criminal District Court #3, 837 F.2d 677 (5th Cir. 1988)(citing Nelson,

supra).

Accordingly, Plaintiff's civil rights claims against Rick Warren should be dismissed

as frivolous.

**Administrative Remedy Procedure**

Plaintiff claims Captain Tofton repeatedly refused to answer his grievances filed in

the administrative remedy procedure or allow him to make copies.  Inmates do not have a

constitutionally protected right to a prison administrative grievance procedure.  See

Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (United States District Court, Western District

of Louisiana 4/24/00); Brown v. Dodson, et al., 863 F.  Supp. 284 (United States District

Court, Western District of Virginia 6/2/94); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).

A prison official's failure to comply with a state administrative grievance procedure is not

actionable under Section 1983 because a state administrative grievance procedure does not

confer any substantive constitutional right upon prison inmates.  Mann v. Adams, 855 F.2d

639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct.  242, 102 L.Ed.2d 231.

Furthermore, state administrative grievance procedures are separate and distinct from

state and federal legal procedures.  Thus, a prison official's failure to comply with state

administrative grievance procedures does not compromise an inmate's right of access to the

courts.  Flick, supra.  Thus, insofar as Plaintiff alleges that the Defendants failed to comply with the prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983.

**Habeas Relief**

Although Plaintiff submitted his claims on the standardized civil rights complaint form, it is incumbent upon this court to determine preliminarily whether the facts alleged establish claims under 42 U.S.C. § 1983 of the Civil Rights Act, or whether the claims are ones which must be pursued initially in a habeas corpus proceeding.  This determination is made by focusing on "the scope of relief actually sought."  Alexander v. Ware, 417 F.2d 416, 419 (5th Cir. 1983); Serio v. Members of the La. State Bd. of Pardons, 821 F.2d 1112, 1117 (5th Cir. 1987).

When a claimant challenges the very fact or duration of his physical confinement and seeks an immediate release or speedier release from confinement as relief, he must pursue his claim through an application for writ of habeas corpus.  See Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827 (1973).  In accordance with this guideline, the United States Court of Appeals for the Fifth Circuit adopted a "per se rule barring consideration of claims under [42 U.S.C.] § 1983 that directly or indirectly challenge the constitutionality of the state conviction or sentencing decision under which the claimant is currently confined."  Serio, 821 F.2d at 1117 (citing Fulford v. Klein, 529 F.2d 377, 381 (5th Cir. 1976), adhered to en banc, 550 F.2d 342 (1977)).

Plaintiff is challenging his convictions and sentences and his claims clearly fall within

the strictures of this guideline.  However, habeas relief is unavailable to Plaintiff at this time.

Although such relief is available to a person who is in custody "in violation of the

Constitution or laws or treaties of the United States,"  28 U.S.C. § 2254, the right to pursue

habeas relief in federal court is not unqualified.  It is well settled that a petitioner seeking

federal habeas corpus relief cannot collaterally attack his state court conviction or sentence

in federal court until he has exhausted all available state remedies.  See 28 U.S.C. §

2254(b)(1)(A); Rose v. Lundy, 455 U.S. 509 (1982); Minor v. Lucas, 697 F.2d 697 (5th Cir.

1983).

This requirement is not a jurisdictional bar, but a procedural one erected in the interest

of comity to provide state courts first opportunity to pass upon and to correct alleged

constitutional violations.  See Picard v. Connor, 404 U.S. 270, 275 (1971); Rose v. Lundy,

455 U.S. 509 (1982).  From the information provided in Petitioner's complaint and amended

complaints, it does not appear that he has exhausted his available state remedies.

Accordingly, Plaintiff is not entitled to habeas relief at this time because he has failed to

exhaust his state court remedies.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds

Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before

or after service of process, and before or after answers have been filed.  See 28 U.S.C.

§ 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766

F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in

making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights claims seeking monetary damages for his allegedly unconstitutional convictions and sentences be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e) until such time as the Heck conditions are met.  **IT IS FURTHER RECOMMENDED** that Plaintiff's remaining civil rights claims be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e). **IT IS FURTHER RECOMMENDED** that Plaintiff's request for habeas relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions

and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under Section 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within **fourteen (14) days** from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 12th day of August 2016.

Mark L. Hornsby
U.S. Magistrate Judge